1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT H. O'CONNOR, | Case No. 13-cv-05874 NC |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, and DENYING PLAINTIFF'S APPLICATION FOR TRO** |
| v. | |
| NATIONSTAR MORTGAGE, LLC, | |
| Defendant. | Re: Dkt. Nos. 16, 33, 34 |

The issue before the Court is whether pro se plaintiff Robert O'Connor has stated any claim for relief against defendant Nationstar Mortgage, the beneficiary under a deed of trust to property formerly owned by O'Connor. Nationstar purchased the property in non-judicial foreclosure proceedings. For the reasons set forth below, the Court finds that the complaint is barred in part by res judicata and otherwise fails to state a claim for relief. Accordingly, the Court GRANTS Nationstar's motion to dismiss the complaint. The Court DENIES O'Connor's application for a temporary restraining order and order to show cause why a preliminary injunction should not be granted.

## I. BACKGROUND

### A.    O'Connor's Allegations

In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court

assumes that all material facts alleged in the complaint are true. *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010). The operative complaint here alleges that O'Connor is the sole owner of residential property located at 3157 Baker Street, San Francisco ("the property"). Dkt. No. 6 ¶ 4. The complaint alleges that defendant Nationstar "claims to be the actual owner under a [sic] Assigned of Deed of Trust to the property" and that "Nationstar became the beneficiary under a Deed of Trust recorded on plaintiff's property on April 11, 2007, by Assignment of Deed recorded on April 12, 2012." *Id.* ¶¶ 5-6. The complaint further alleges that on November 13, 2013, Nationstar gave notice of trustee's sale. *Id.* ¶ 9.

Public records submitted by the parties, of which the Court takes judicial notice as specified below, show that on April 23, 2007, a deed of trust was recorded on the property as security for a loan. Dkt. No. 29 at 42-43. The deed of trust identifies the lender as SCME Mortgage Bankers, Inc. ("SCME"), the beneficiary as Mortgage Electronic Registration Systems ("MERS"), "acting solely as a nominee" for the lender and its successors and assigns, and the trustee as Stewart Title Company of San Diego. *Id.* On August 11, 2009, a substitution of trustee was recorded showing that MERS designated Cal-Western Reconveyance Corporation ("Cal-Western") as trustee dated July 8, 2009. Dkt. No. 16-1 at 27-30. On July 14, 2009, Cal-Western recorded a notice of default due to O'Connor's failure to make the payments on the loan. *Id.* at 31-33. On February 15, 2011, an assignment of deed of trust was recorded showing that on July 14, 2009, MERS assigned the deed of trust to Aurora Loan Services LLC ("Aurora"). *Id.* at 34-36. On December 12, 2012, another assignment of deed of trust was recorded, showing that on September 20, 2012, Aurora assigned the deed of trust to Nationstar. Dkt. No. 6 at 11-13 (assignment of deed of trust, attached as Exhibit B to the operative complaint); *see also Id.* ¶ 6.

On January 29, 2010, a notice of trustee's sale for the property was recorded, noticing a public auction for February 18, 2010. Dkt. No. 16-1 at 49. On July 14, 2010, O'Connor filed a lawsuit in San Francisco Superior Court, Case No. CSC-10-501555, against SCME, MERS, Cal-Western, Aurora and Deutsche Bank National Trust Company Americas as

Trustee (the "state court action").  Dkt. Nos. 7-4 at 1-30.  In the complaint, O'Connor asserted various claims, including for wrongful foreclosure, fraud, unfair business practices, declaratory relief, and to quiet title, all of which challenged the authority of the defendants to foreclose on the property and sought to void the deed of trust and quiet title "in Fee Simple" to O'Connor as to the interest of the defendants.  *Id.* ¶¶ 1-2, 44-58, 68-86, 93-95. On April 6, 2011, the state court entered an order sustaining defendants' demurrers to the complaint without leave to amend, finding that O'Connor "has not pleaded any basis to avoid [defendants'] rights to proceed against the property" and dismissed the case with prejudice.  Dkt. No. 31-1 at 3-8.  Also on the same date, the state court issued a final judgment against O'Connor and in favor of defendants.  Dkt. Nos. 7-4 at 31-36.

On November 4, 2013, a notice of trustee's sale for the property was recorded, noticing a public auction for November 26, 2013.  Dkt. No. 16-1 at 38.  On February 12, 2014, a trustee's deed upon sale was recorded showing that Cal-Western, as trustee, conveyed the property to Nationstar on January 15, 2014, after the property was sold to Nationstar at the public auction held on November 26, 2013.  Dkt. No. 31-1 at 9-12.

**B.  Procedural History**

O'Connor initiated this action on December 18, 2013.  Dkt. No. 1.  On January 28, 2014, O'Connor filed his first amended complaint.  Dkt. No. 6.  O'Connor brings six causes of action against Nationstar: (1) to set aside trustee's sale; (2) to cancel trustee's deed; (3) to quiet title; (4) for wrongful foreclosure; (5) for violation of California Business and Professions Code § 17200 *et seq.*; and (6) for violation of the Fair Debt Credit Reporting Act ("FCRA").  *See generally* Dkt. No. 6.  Throughout the operative complaint, O'Connor also alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), although no claim is titled as being brought under the FDCPA.  *Id.*  The relief sought by O'Connor includes, among other things, (1) "a declaration that the sale of the property is null and void"; (2) "an order setting aside the trustee's sale or [sic] the property"; (3) an order that "Nationstar deliver the Substitute Trustee's Deed to the Court" and that "cancels the Assignment/Substitute Trustee's Deed"; (4) a "judgment quieting title to O'Connor as the

1   owner of the property"; (5) compensatory damages; and (6) "all relief to which he is entitled
2   under the Fair Credit Reporting Act, including an award of punitive damages against the
3   Defendants for willful violations of the FCRA." *Id.* at 7.

4          Nationstar filed a motion to dismiss O'Connor's first amended complaint, which
5   O'Connor opposed. Dkt. Nos. 16, 29. On April 15, 2014, O'Connor filed an ex parte
6   application for temporary restraining order and order to show cause why a preliminary
7   injunction should not be granted enjoining Nationstar from further interfering with
8   O'Connor's possession of the property. Dkt. Nos. 33, 34. Nationstar has not filed an
9   opposition to the TRO application. On April 23, 2014, the Court held a hearing on
10  Nationstar's motion to dismiss and also addressed O'Connor's TRO application.

11         The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
12  1331 because the complaint alleges violations of FCRA and FDCPA. *See* Dkt. No. 6 ¶ 1.
13  The parties consented to the jurisdiction of a United States Magistrate Judge under 28
14  U.S.C. § 636(c). Dkt. Nos. 10, 24, 27.

15  **C.    Requests for Judicial Notice**

16         As a preliminary matter, the Court addresses the parties' requests for judicial notice of
17  documents submitted in connection with the motion to dismiss. Nationstar filed a request
18  for judicial notice in support of its motion to dismiss, Dkt. No. 16-1 ("February 14 RJN"),
19  and in support of its reply, Dkt. No. 31-1 ("April 11 RJN"). In addition, at the hearing on
20  the motion to dismiss, Nationstar stated that it seeks judicial notice of the documents
21  submitted in connection with its motion to dismiss the original complaint which was
22  withdrawn by Nationstar due to the filing of the first amended complaint ("January 29
23  RJN"). *See* Dkt. Nos. 7, 7-2, 7-3, 7-4, 12. O'Connor also attaches voluminous exhibits to
24  his opposition to the motion to dismiss, which the Court construes as a request for judicial
25  notice ("April 4 RJN"). Dkt. No. 29 at 24-115, 29-1. The documents subject to the parties'
26  requests for judicial notice are voluminous and duplicative. In addition, while both parties
27  oppose each other's requests for judicial notice, they seek judicial notice of some of the
28  same documents. *See, e.g.*, Exhibit A to Nationstar's February 14 RJN and Exhibit E to

O'Connor's April 4 RJN (Deed of Trust recorded April 23, 2007); Exhibits G-H to Nationstar's January 29 RJN and Exhibit F to O'Connor's April 4 RJN (complaint and judgment of dismissal in O'Connor's state court action).

Generally, a court may not look to matters beyond the complaint without converting a motion to dismiss into one for summary judgment. *Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citations omitted). However, a court may take judicial notice of material that is submitted as part of the complaint, or is necessarily relied upon by the complaint, as well as matters of public record. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). Under Federal Rule of Evidence 201(b), "a judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned." *Datel Holdings*, 712 F. Supp. 2d at 983. A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

The Court takes judicial notice of the existence of Exhibits A-K to Nationstar's January 29 RJN, Exhibit A to Nationstar's April 11 RJN, and Exhibits F, M, and O to O'Connor's April 4 RJN as they are court records. *See, e.g.*, *Hunt v. Check Recovery Sys. Inc.*, 478 F. Supp. 2d 1157, 1160-61 (N.D. Cal. 2007) ("Judicial notice may be taken of 'adjudicative facts' such as court records, pleadings."). The Court further takes judicial notice of the existence of Exhibits A-H to Nationstar's February 14 RJN, Exhibit B to Nationstar's April 11 RJN, and Exhibits E, G, N, and T to O'Connor's April 4 RJN, as they are public records. *See e.g.*, *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of documents in a county public record, including state court file and deeds of trust); *Valasquez v. Mortgage Elec. Registration Sys., Inc.*, No. 08-3818 PJH, 2008 WL 4938162, at *2-3 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of deed of trust and notice of default). The requests for judicial notice are granted as to the existence of the documents but not as to the truth of their contents. *See*

Fed. R. Evid. 201(b); *Lee*, 250 F.3d at 690.

O'Connor's request for judicial notice of correspondence (Exhibits A-C, H-K, U, and AA-DD of his April 4 RJN), credit report excerpts (Exhibits D, W-X, and Z to his April 4 RJN), documents titled "Foreclosure History" (Exhibits L and Q to his April 4 RJN), property listing (Exhibit P to his April 4 RJN), document titled "Amended Preliminary Report" (Exhibit R to his April 4 RJN), handwritten note (Exhibit S to his April 4 RJN), notice to tenants (Exhibit V to his April 4 RJN), and document titled "Adjustable Rate Note" (Exhibit Y to his April 4 RJN) is denied on the basis that O'Connor has not shown that the facts for which he seeks judicial notice are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Coal. For ICANN Transparency, Inc.*, 611 F.3d at 501. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). While a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## III. DISCUSSION

**A.    The First Amended Complaint Is Dismissed with Leave to Amend.**

Nationstar contends that O'Connor's claims must be dismissed as barred by res judicata and otherwise for failing to state a claim. For the reasons discussed below, the Court agrees and dismisses the first amended complaint. The Court will address first the

1   two federal law claims.

2       **1.    The Complaint Fails to State a Claim under the FCRA.**

3       In his complaint, O'Connor alleges that Nationstar is a "provider[] of information to

4   Credit Reporting Agencies under the Fair Credit Reporting Act and reported negative marks

5   against Plaintiff." Dkt. No. 6 ¶ 28. O'Connor asserts that he is entitled to damages under

6   15 U.S.C. § 1681s-2(b) (imposing duties on furnishers of information upon notice of

7   dispute), 15 U.S.C. § 1681o (civil liability for negligent noncompliance), and punitive

8   damages under 15 U.S.C. § 1681n(a)(2) (civil liability for willful noncompliance). Dkt. No.

9   6 ¶ 28.

10       Congress enacted the FCRA in 1970 to regulate credit reporting agencies ("CRAs")

11   in order to ensure fair and accurate credit reporting. *See* 15 U.S.C. § 1681; *Gorman v.*

12   *Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009); *see also Carvalho v.*

13   *Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (stating that the purpose of the

14   FCRA is to protect consumers from the transmission of inaccurate information about them).

15   In addition, the FRCA imposes certain responsibilities on furnishers of information to

16   CRAs. *See* 15 U.S.C. 1681s–2; *Gorman*, 584 F.3d at 1154. Subsection 1681s–2(a) sets

17   forth the duty "to provide accurate information," but only federal or state agencies may

18   enforce this provision. *See* 15 U.S.C. § 1681s–2(a),(c),(d); *Gorman*, 584 F.3d at 1154.

19   "Section 1681s–2(b) imposes a second category of duties on furnishers of information . . .

20   [which] are triggered 'upon notice of dispute'—that is, when a person who furnished

21   information to a CRA receives notice from the CRA that the consumer disputes the

22   information." 15 U.S.C. 1681s–2(b); *Gorman*, 584 F.3d at 1154. Subsection 1681s–2(b)(1)

23   provides that, after receiving a notice of dispute "with regard to the completeness or

24   accuracy of any information" provided to a CRA, the furnisher must:

25       (A) conduct an investigation with respect to the disputed information;

26       (B) review all relevant information provided by [CRA] pursuant to section
27       1681i(a)(2) . . . ;

28       (C) report the results of the investigation to the [CRA];

1

2

3

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

4

5

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

6

7

      (i) modify that item of information;
      (ii) delete that item of information; or
      (iii) permanently block the reporting of that item of information.

8

15 U.S.C. 1681s–2(b).

9

10

11

12

    Here, O'Connor does not allege that he disputed the completeness or accuracy of any information provided by Nationstar to a CRA and that Nationstar received notice from the CRA of that dispute.  Furthermore, O'Connor fails to allege what actions Nationstar took or failed to take that were not in compliance with the duties imposed by the FCRA.

13

14

15

16

17

18

19

20

21

    Rather than addressing the sufficiency of the violations of FCRA alleged in his complaint, in his opposition to the motion to dismiss O'Connor raises a new theory of liability, asserting that Nationstar violated 15 U.S.C. § 1681b by "obtaining credit information without a 'permissible purpose.'"  Dkt. No. 29 at 21.  The complaint, however, does not contain such an allegation and provides no factual basis for a plausible claim for violation of § 1681b.  *See* 15 U.S.C. § 1681b(a)(3)(F)(i) (setting forth the circumstances under which CRAs may furnish a consumer report, including "[t]o a person which it has reason to believe has a legitimate business need for the information--(i) in connection with a business transaction that is initiated by the consumer").

22

23

    O'Connor's conclusory allegations of violations of the FCRA fail to state a claim for relief and are dismissed.

24

    **2.**     **The Complaint Fails to State a Claim under the FDCPA.**

25

26

27

28

    O'Connor also alleges that Nationstar is a "debt collector" as defined in the FDCPA because Nationstar was "assigned the alleged debt after it was in default merely for the purpose of collection."  Dkt. No. 6 ¶ 12 (citing 15 U.S.C. § 1692a).  O'Connor further alleges that Nationstar failed to comply with 15 U.S.C. § 1692i (regulating legal actions by

debt collectors).  Dkt. No. 6 ¶¶ 10, 28.  The complaint does not specify what conduct of Nationstar violated the FDCPA.  Nationstar moves to dismiss O'Connor's FDCPA claim on the basis that the only conduct alleged by him relates to non-judicial foreclosure activities pursuant to a deed of trust secured by the property, and that such conduct does not constitute "debt collection" for the purposes of the FDCPA.  Dkt. Nos. 16 at 17; 31 at 16.

The purpose of the FDCPA, 15 U.S.C. §§ 1692-1692p, is to "eliminate abusive debt collection practices by debt collectors" and to protect consumers against debt collection abuses.  15 U.S.C. § 1692(e).  "The question of whether a foreclosure constitutes 'debt collection' under the FDCPA has not been decided by the Ninth Circuit, but 'district courts throughout the Ninth Circuit have concluded that it does not.'"  *Zhang v. Countrywide Home Loans, Inc.*, No. 11-cv-03475 NC, 2012 WL 1245682, at *11 (N.D. Cal. Apr. 13, 2012) (quoting *Geist v. OneWest Bank*, No. 10-cv-1879 SI, 2010 WL 4117504, at *2-3 (N.D. Cal. Oct. 19, 2010)); *see also Cromwell v. Deutsche Bank Nat. Trust Co.*, No. 11-cv-2693 PJH, 2012 WL 244928, at *2 (N.D. Cal. Jan. 25, 2012) ("[T]he vast majority of district courts within the Ninth Circuit to have considered the issue have concluded that the FDCPA does not apply to the actions taken by lenders or their agents when foreclosing on the lender's security interest under a deed of trust, in a non-judicial foreclosure of property.");  *Natividad v. Wells Fargo Bank, N.A.*, No. 12-cv-03646 JSC, 2013 WL 2299601, *9 (N.D. Cal. May 24, 2013) (concluding that plaintiffs had not sufficiently alleged a FDCPA claim because "legally-mandated actions required for mortgage foreclosure are not necessarily debt collection, and . . . Plaintiffs have not adequately alleged that any defendant engaged in any action beyond statutorily mandated actions for non judicial foreclosure").

Here, O'Connor bases his claims on the following alleged conduct: that Nationstar (1) "became the beneficiary under a Deed of Trust recorded on plaintiff's property," Dkt. No. 6 ¶ 6; (2) acted as "Attorney in Fact" but failed "to provide a copy of any Attorney-in-Fact, issued to them by Aurora," *Id.* ¶ 9; (3) "gave Notice of Trustee's Sale," *Id.* ¶ 9; (4) "did not comply with the requirements of foreclosure statues [sic]," *Id.* ¶ 10; and (5) "none of the

1   documentation used in their process was ever authenticated by anyone having firsthand

2   knowledge of any alleged transaction," *Id.* ¶ 12.  All of these alleged activities are in

3   connection with the non-judicial foreclosure proceedings and, therefore, do not qualify as

4   "debt collection" under the FDCPA.  O'Connor's assertion in his opposition that

5   "Defendants . . . committed collection activities, . . . that were outside the scope of the

6   ordinary foreclosure process" has no basis in the complaint.  Dkt. No. 29 at 20.

7   Accordingly, the FDCPA claim is dismissed for failure to state a claim.

8          **3.      The Complaint Fails to State a Claim under State Law.**

9          In addition to the FCRA and FDCPA claims, O'Connor brings claims under state law

10  (1) to set aside trustee's sale; (2) to cancel trustee's deed; (3) to quiet title; (4) for wrongful

11  foreclosure; and (5) for violation of California Business and Professions Code § 17200 *et*

12  *seq.*  The first two claims—to set aside trustee's sale and to cancel trustee's deed—include

13  references to violations of the FCRA and the FDCPA.  Dkt. No. 6 ¶¶ 8-13.  To the extent

14  the state law claims are based on violations of FCRA and the FDCPA, they fail for the

15  reasons discussed in this order.[1]

16         Aside from those alleged violations of federal law, the complaint does little to

17  identify any conduct by Nationstar that could support the alleged state law claims.  As part

18  of the first two claims, O'Connor alleges that Nationstar acted as "Attorney in Fact" but

19  failed "to provide a copy of any Attorney-in-Fact, issued to them by Aurora," *Id.* ¶ 9;

20  Aurora "illegally obtained an assignment from MERS who cannot as a matter of law assign

21  a note from the original lender," *Id.* ¶ 9; Nationstar "did not comply with the requirements

22  of foreclosure statues [sic]," *Id.* ¶ 10; and "none of the documentation used in their process

23  was ever authenticated by anyone having firsthand knowledge of any alleged transaction,"

24  *Id.* ¶ 12.  The quiet title, wrongful foreclosure, and unfair competition claims merely

25  incorporate by reference the preceding allegations of the complaint.  *Id.* ¶¶ 14-26.

26

27

28  [1] In his opposition, O'Connor argues that his UCL claim is based on Nationstar's alleged violation of the FCRA and the CCRAA.  Dkt. No. 29 at 18:11-19:2.

1   Nationstar argues that these claims should be dismissed because they are barred by

2   res judicata and otherwise fail to state a claim for relief.  The Court addresses these

3   arguments in turn.

### a.  The State Law Claims Are Barred in Part by Res Judicata.

5   O'Connor's state law claims are, at least in part, based on allegations that Nationstar

6   does not have a legal interest in the property and lacks the authority to foreclose because

7   MERS and Aurora did not have the right to assign the deed of trust to the property.  Dkt.

8   No. 6 ¶¶ 9, 12, 15.  In his opposition, O'Connor repeats the allegation that MERS did not

9   have the authority to assign the deed of trust.  Dkt. No. 29 at 14:5-21.  As Nationstar

10  correctly argues, such claims are barred by res judiciata.

11  A Rule 12(b)(6) motion is the appropriate vehicle to raise the affirmative defense of

12  res judicata where there are no disputed issues of fact.  *Scott v. Kuhlmann*, 746 F.2d 1377,

13  1378 (9th Cir. 1984).  The Full Faith and Credit Act requires that federal courts give state

14  court judgments the same full faith and credit in federal court.  28 U.S.C. § 1738.  Thus,

15  when a state court issues a final judgment in a case, § 1738 "requires that federal courts

16  give the state-court judgment . . . the same preclusive effect it would have had in another

17  court of the same State."  *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 525

18  (1986).  Furthermore, when addressing state court judgments, federal courts must "look to

19  the law of the rendering State to ascertain the effect of the judgment."  *Matsushita Elec.*

20  *Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 375 (1996).

21  In California, to properly assert the doctrine of res judicata, a party must show that:

22  (1) A claim or issue raised in the present action is identical to a claim or issue
23  litigated in a prior proceeding; (2) the prior proceeding resulted in a final
    judgment on the merits; and (3) the party against whom the doctrine is being
24  asserted was a party or in privity with a party to the prior proceeding.

25  *People v. Barragan*, 32 Cal. 4th 236, 252-53 (2004).

26  "Unlike the federal courts, which apply a transactional nucleus of facts test, California

27  courts employ the primary rights theory to determine what constitutes the same cause of

28  action for claim preclusion purposes."  *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir.

2009) (internal quotation marks and citation omitted); *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002).  The primary right theory provides that a cause of action is comprised of (1) a primary right of the plaintiff; (2) a corresponding primary duty of the defendant, and (3) a wrongful act by the defendant constituting a breach of that duty. *Mycogen*, 28 Cal. 4th at 904.  "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *Id.* (citation omitted).

Under the primary right doctrine, "all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date." *Id.* at 897.  "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery."  *Brodheim*, 584 F.3d at 1268 (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983)); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1032 (9th Cir. 2005) ("Different theories of recovery are not separate primary rights.").  "[T]he rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable."  *Aerojet-Gen. Corp. v. Am. Excess Ins. Co.*, 97 Cal. App. 4th 387, 402 (2002) (quoting *Sutphin v. Speik*, 15 Cal. 2d 195, 202 (1940)).  "If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest.  A party cannot by negligence or design withhold issues and litigate them in consecutive actions."  *Id.*

In the state court action, O'Connor asserted several claims, including claims for wrongful foreclosure, unfair business practices, and to quiet title, challenging the authority of the defendants to foreclose on the same property at issue in this action, and seeking to void the deed of trust and quiet title in favor of O'Connor as to the interest of the defendants.  Dkt. Nos. 7-4 ¶¶ 1-2, 44-58, 68-75, 93-95.  The Court finds that the state law

1  claims brought by O'Connor in this case, alleging wrongful foreclosure and seeking to set

2  aside the trustee's sale and to quiet title, involve the same primary right and are based on

3  the same cause of action as the state court action.  O'Connor, in fact, does not dispute that

4  his claims challenging the foreclosure of the property are barred by res judicata and instead

5  argues that his claims for violations under FCRA and FDCPA are not subject to that bar:

> In Plaintiff's state court action, Plaintiff sought relief for- as Defendants phrase
> it "Plaintiff's claim is premised on the allegation that because assignments of
> the deed of trust were allegedly improper, Defendants do not have authority to
> foreclose on the property." Further, Defendants state that "Plaintiff had an
> opportunity to challenge the foreclosure proceedings, specifically the
> assignments of the Deed of Trust and lost."
>
> But in this new action, Plaintiff seeks redress for invasion of a different
> primary right: the right guaranteed by the FDCPA, FCRA, Rosenthal Act, and
> CCRAA and the numerous violations by Defendants.

12  Dkt. No. 29 at 11:3-13; *see also Id.* at 4:16-24; *Id.* at  9:6-20 ("Plaintiff, here, seeks to

13  recover damages under Federal and state statutes, such as, the FDCPA, FCRA, Rosenthal

14  Act, and CCRAA for their numerous violations.[2]  Thus, the issue in this case is whether

15  Defendants violated any of these Federal or state statutes, and whether damages can be

16  sought."); *Id.* at 16:1-2 ("Plaintiff is not challenging the foreclosure process.").

17  Accordingly, the Court finds that the first requirement of res judicata is satisfied.

18  The second requirement of final judgment on the merits is also satisfied.  The court in

19  the state court action sustained defendants' demurrers to the complaint without leave to

20  amend, finding that O'Connor "has not pleaded any basis to avoid [defendants'] rights to

21  proceed against the property," dismissed the case with prejudice, and issued a final

22  judgment.  Dkt. Nos. 31-1 at 3-8; 7-4 at 31-36.  This constituted a final adjudication on the

23  merits.  *See Brambila v. Wells Fargo Bank*, No. 12-cv-04224 NC, 2012 WL 5383306, at *4-

24  5 (N.D. Cal. Nov. 1, 2012) ("A judgment given after the sustaining of a general demurrer on

25  a ground of substance . . . may be deemed a judgment on the merits, and conclusive in a

---

[2] In his opposition, O'Connor asserts that Nationstar also violated the Rosenthal Act, and California
Credit Reporting Agency Act.  *See, e.g.*, Dkt. No. 29 at 2:22-25.  While Nationstar argues that these
claims also lack merit, the Court will not address claims not alleged in the complaint.

Case No. 13-cv-05874 NC
ORDER ON MOTION TO DISMISS                13

subsequent suit; and the same is true where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action." (quoting *Goddard v. Security Title Insur. & Guarantee Co.*, 14 Cal. 2d 47, 52 (1937)); *Chavez v. JPMorgan Chase Bank N.A.*, No. 13-cv-03844 LB, 2013 WL 5978478, at *4 (N.D. Cal. Nov. 8, 2013) (state court order sustaining demurrer to complaint without leave to amend and dismissing action constituted an adjudication on the merits for purposes of res judicata).

Finally, the third requirement of res judicata is also satisfied in that Nationstar is in privity with a party to the state court action. In considering the application of res judicata, "courts examine the practicalities of the situation and attempt to determine whether plaintiffs are sufficiently close to the original case to afford application of the principle of preclusion. . . . We have previously held that privity exists where the person involved is . . . so identified in interest with another that he represents the same legal right." *Armstrong v. Armstron*g, 15 Cal. 3d 942, 951 (1976) (internal quotation marks and citations omitted). Here, Nationstar obtained an assignment of deed of trust to the property from Aurora, which was a named defendant in the state court action, along with MERS and other defendants. *See* Dkt. No. 6 at 11-13 (assignment of deed of trust, attached as Exhibit B to the operative complaint); *see also Id.* ¶ 6 ("Nationstar became the beneficiary under a Deed of Trust recorded on plaintiff's property on April 11, 2007, by Assignment of Deed recorded on April 12, 2012."); Dkt. Nos. 7-4 at 1-30. Nationstar is, therefore, in privity with Aurora for the purposes of res judicata.

As all three elements of res judicata are established here, O'Connor is estopped from re-litigating his claims challenging the foreclosure of the property. Therefore, to the extent O'Connor's state law claims are based on matters which were raised or could have been raised in the state court action, they are barred by res judicata and are dismissed without leave to amend.

//

### b.  O'Connor Fails to State a Claim Challenging Nationstar's Authority to Foreclose.

Furthermore, to the extent O'Connor contends that there is an independent basis to challenge the authority of Nationstar to foreclose that is different from the primary right and the cause of action asserted in the prior state court action, he has failed to allege such a basis.  As courts have noted, "[n]othing in the statutory provisions establishing the nonjudicial foreclosure process suggests that" a borrower may, "bring a civil action in order to test whether the person electing to sell the property is, or is duly authorized to do by, the owner of the beneficial interest in it."  *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1154 (2011).  While the complaint makes the vague allegation that Nationstar failed to "provide a copy of any Attorney-in-Fact, issued to them by Aurora," Dkt. No. 6 ¶ 9, it is unclear why this alleged failure would provide a basis to set aside the trustee's sale or otherwise challenge the foreclosure proceedings.  Because O'Connor has not alleged any factual basis for his assertion that Nationstar has no right to the property, aside from allegations barred by res judicata, his state law claims must be dismissed.

### c.  O'Connor Fails to State a Claim to Set Aside the Foreclosure Because He Has Failed to Allege Tender.

Nationstar further argues that O'Connor's claims challenging the foreclosure proceedings should be dismissed because he fails to allege tender of the amount due on the loan.  "To obtain the equitable set aside of a trustee's sale or maintain a wrongful foreclosure claim, a plaintiff must allege that (1) defendants caused an illegal, fraudulent, or willfully oppressive sale of the property pursuant to a power of sale in a mortgage or deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or were excused from tendering."  *Chavez v. Indymac Mortgage Servs.*, 219 Cal. App. 4th 1052, 1062 (2013); *see also Rivac v. Ndex W. LLC*, No. 13-cv-1417 PJH, 2013 WL 6662762, at *5 (N.D. Cal. Dec. 17, 2013) ("Under California law, the tender rule requires, as a precondition to challenging a foreclosure sale, or asserting any cause of action implicitly integrated to the sale, that the borrower make a valid and viable tender of payment of the secured debt. . . . That is, a party cannot challenge foreclosure

proceedings without first alleging tender." (internal quotation marks and citations omitted)). "Recognized exceptions to the tender rule include when: (1) the underlying debt is void, (2) the foreclosure sale or trustee's deed is void on its face, (3) a counterclaim offsets the amount due, (4) specific circumstances make it inequitable to enforce the debt against the party challenging the sale, or (5) the foreclosure sale has not yet occurred." *Chavez*, 219 Cal. App. 4th at 1062.

Accordingly, O'Connor's claims challenging the foreclosure proceedings are also dismissed for failure to allege tender or any factual basis that might support the application of an exception to the rule requiring tender.

**B.    Leave to Amend**

In dismissing for failure to state a claim, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Furthermore, "[c]ourts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints." *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003). Because it is not clear that O'Connor cannot possibly allege additional facts to cure the defects of his complaint, the Court will allow O'Connor to file a motion for leave to amend the complaint.

O'Connor is admonished, however, that any amended complaint must comply with Federal Rule of Civil Procedure 11(b) and that a violation of that rule could result in a sanction being imposed against him. A Rule 11 sanction is appropriate when a pleading is both baseless and made without a reasonable and competent inquiry. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990).

**C.    The TRO Application Is Denied.**

The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer

1  irreparable harm in the absence of preliminary relief, that the balance of equities tips in his

2  favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,*

3  *Inc.*, 555 U.S. 7, 20 (2008).  But if a plaintiff can only show that there are "serious

4  questions going to the merits," a preliminary injunction may still issue if the "balance of

5  hardships tips sharply in the plaintiff's favor," and the other two *Winter* factors are satisfied.

6  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Drakes*

7  *Bay Oyster Co. v. Jewell*, No. 13-15227, 2014 WL 114699, at *8 (9th Cir. Jan. 14, 2014).

8  "Preliminary injunction is as an extraordinary remedy that may only be awarded upon a

9  clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

10  O'Connor's ex parte application for temporary restraining order and order to show

11  cause why a preliminary injunction should not be granted seeks to enjoin Nationstar from

12  "selling, auctioning, attempting to auction or sell, causing to be sold or auctioned,

13  transferring ownership or title, evicting through unlawful detainer process or any other

14  means, or otherwise further encumbering" the property.  Dkt. Nos. 33, 34.  As O'Connor

15  acknowledges, the property here was sold at a trustee's sale on November 26, 2013.  Dkt.

16  No. 33 at 3; *see also* Dkt. No. 31-1 at 9-12.  O'Connor asserts that, since January 2014,

17  Nationstar has been advertising the property for sale, has disturbed O'Connor's tenants at

18  the property, and has posted eviction notices at the property, initiating the process of an

19  unlawful detainer action.  Dkt. No. 33 at 5.  After the hearing on the motion to dismiss,

20  O'Connor submitted a declaration stating that his tenants found an eviction notice on the

21  property the day after the hearing.  Dkt. No. 38 at 1-2.  O'Connor claims that he will suffer

22  irreparable injury because if he "lose[s] his real property and his tenants will be evicted

23  from their home, [he] will incur the costs and emotional distress of losing his property and

24  repairing his further damaged credit history."  Dkt. No. 34 at 2, 14.

25  Courts have recognized that the loss of one's home may constitute irreparable harm.

26  *See e.g.*, *Perry v. Nat'l Default Servicing Corp.*, No. 10-cv-03167 LHK, 2010 WL 3325623,

27  at *6 (N.D. Cal. Aug. 20, 2010).  This case is distinguishable, however, because the

28  property at issue is occupied by tenants, and has already been sold.  More importantly, the

Case No. 13-cv-05874 NC
ORDER ON MOTION TO DISMISS                    17

loss of property is not sufficient to obtain a TRO here because, for the reasons set forth in granting Nationstar's motion to dismiss the complaint, O'Connor cannot show serious questions going to the merits, much less a likelihood to succeed on the merits. *See Id.* ("When the chance of success is very low, courts have refused to grant preliminary injunctive relief to halt a home foreclosure."); *Sterling v. Deutsch Bank Americas*, No. 14-cv-00827 CW, 2014 WL 1102558, at *3 (N.D. Cal. Mar. 18, 2014) (denying plaintiffs' application for temporary restraining order and preliminary injunction to halt a state court unlawful detainer proceeding where plaintiffs had not demonstrated a likelihood that the foreclosure and corresponding sale were faulty and thus could not show a likelihood that they were entitled to occupy the premises at issue).

## IV. CONCLUSION

The Court GRANTS Nationstar's motion to dismiss the complaint, and DENIES O'Connor's application for a temporary restraining order and order to show cause why a preliminary injunction should not be granted.

The Court permits O'Connor to file a motion, within 21 days from the date of this order, for leave to amend, noticed on a normal schedule. The proposed second amended complaint must be appended to the motion. The motion should clearly explain how the amendment cures the deficiencies described in this order. If O'Connor chooses not to amend his complaint, the case will be dismissed with prejudice.

IT IS SO ORDERED.

Date: May 5, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge